ROBERT C. ZIMMERMAN, Secretary of State
You request my opinion on three questions requiring an interpretation of sec. 5.62 (2), Stats. Section 5.62, Stats., provides, in part, as follows:
"September primary ballots. At September primaries, where necessary, the following ballot shall be provided for each precinct, in substantially the same form as annexed Ballot 1.
". . .
"(2) Any political organization may be represented by a separate ballot if, not later than June 1 in the year of a September primary, it files with the secretary of state a petition so requesting, signed either by electors equal to one-sixth of the total vote cast for governor in each of at least 10 counties at the last election or one-sixth of the electors in any senate, assembly or congressional district. When their candidatesfulfill the nomination paper requirements they shall appear on aseparate ballot within the district or state." (Emphasis added)
You first request my opinion as to whether the filing of a proper petition under sec. 5.62, Stats., by the requisite number of electors in a senate, assembly or congressional district, will qualify a political organization as a party entitled to a separate ballot for state-wide offices or will simply entitle it to a separate ballot for a senate, assembly or congressional candidate only.
In my opinion, if a timely petition is filed with your office pursuant to sec. 5.62 (2), Stats., which is property signed by electors of a senate, assembly or congressional district, equal in number to one-sixth of the total vote cast for governor in the district involved at the last gubernatorial election, the political organization referred to in said petition is legally entitled to be represented by a separate ballot within the specific district only. However, its ballot must be in substantially the same form as the official primary ballot otherwise in use on a state-wide basis; i.e., the ballot must make provision for all the state, congressional, legislative and county offices for which an elector may vote at such primary. This would be true even though the only candidate *Page 43 
to fulfill the nomination paper requirements for inclusion on such ballot was a candidate for the senate, assembly or congressional district involved.
The above response to your first question appears to be clearly dictated by the language of the statute. The petition referred in sec. 5.62 (2), Stats., is, after all, a petition requesting that a political organization be represented by a separate ballot. The electors who sign the petition are not nominating anyone for any particular office. The nomination of candidates is a completely different process set forth in ch. 8, Stats. Furthermore, if sec.5.62 (2), Stats., would be interpreted as making provision for a separate ballot for a senate, assembly or congressional candidate only, such an interpretation would affectively preclude the electors belonging to the political organization involved from casting a ballot for any office at the September primary, except the one office on his political organization's ballot. Such a result could not have been intended by the legislature.
Fortunately, our Supreme Court appears to have dealt with a previous version of sec. 5.62 (2), Stats., which is sufficiently similar to the current statute to provide meaningful judicial guidance which suggests the propriety of the foregoing interpretation of the present statute. In the case referred to,State ex rel. Ekern v. Dammann (1934), 215 Wis. 394,254 N.W. 759, the court was considering the proper interpretation of sec.5.05 (6) (e), 1933 Stats., which then read, in part, as follows:
"(e) Any other political organization which shall file with the secretary of state, not less than ninety days prior to the holding of a September primary, a petition signed by not less than one-sixth of the electors in at least ten counties therein, or by one-sixth of the electors within any senatorial, assembly or congressional district, praying that said organization be given a party ticket at the said September primary, may have a separate party ticket as a political party in such district or in the state, as the case may be, at such primary; and all candidates of such party for the nomination as candidates for the office of member of the assembly or of the senate or for representative in congress, if the petition be signed by electors in the district only, or for the nomination as candidates for state offices. If the petition be signed by the above required number of electors in at least ten *Page 44 
counties in the state, shall, upon complying with the provisions of law relative to nomination papers, be placed upon such ticket. . . ."
You will note that the semicolon appearing midway in the above quote separates two sentences which are the rough equivalent of the two sentences of the modern version of the law, sec. 5.62
(2), Stats. The following judicial interpretation of sec. 5.05
(6) (e), 1933 Stats., appears at pages 404-405 of the opinion:
". . . The section is very inartificially drafted, and its construction is not free from difficulty. It is our conclusion that the words, `may have a separate party ticket as a political party in such district or in the state, as the case may be, at such primary,' have reference to territory and not to offices; that a party, the petition of which qualifies it for a party ticket in the state, is entitled to a full party ticket and not merely to a ticket containing the names of nominees for state offices. Whatever doubt there may be as to the validity of this construction is created by the following sentence:
"(Second sentence of sec. 5.05 (5) (e) 1933 Stats., quoted.)
"It is contended that this clause indicates the scope of theparty ticket; that if a petition is filed within an assemblydistrict only, the party ticket will contain only the candidatefor assembly; that if the petition is signed by the requisite number of electors in at least ten counties of the state, the new organization will be entitled to a separate party ticket for state offices only. In so far as it may be said to be in conflict with the preceding one, this clause must yield, for it deals notwith the scope of the party ticket but with the steps necessaryfor candidates to put themselves upon the party ballot at theprimaries. It is our conclusion that the term `separate party ticket. . . in the state' means a full party ticket throughout the state, including all offices, without restriction. The term is sufficiently inclusive to cover county offices and the office of United States senator, and the term is one that in common usage denotes a full party ticket throughout the state, including all offices to be voted for at the election." (Emphasis added) *Page 45 
Despite the differences in text between the 1933 and the present versions of the law here under consideration, I find nothing in those language variances which suggests that the general intent of the law, as interpreted in the above quote from the EkernCase, has been purposely or inadvertently affected by such changes.
Next, you advise that, in the past, your department has interpreted sec. 5.62 (2), Stats., as authorizing the circulation of the petition during a period commencing after any November general election and ending on the June 1 immediately prior to the next succeeding September primary election. You have further advised that the petition may be filed at any time during this period up until June 1 in the year of the September primary election. You inquire whether my office is in agreement with such interpretation.
In my opinion, the interpretation you have given the statute in reference to the circulation and filing of the petition is correct, and I am, therefore, in accord with your office in this regard. Although the subject statute does not specifically indicate the time for the commencement of the circulation of the petition, general rules of statutory construction and logic would dictate that the time for circulating such petition is limited. Since the primary function of the petition is to secure a separate ballot for the political organization involved at a forthcoming September primary, it is obvious that the circulation of the petition must at least abide the holding of the September primary immediately preceding the primary in reference to which the petition will relate. More specifically, however, the number of signatures required for such petition is determined by the number of eligible voters who voted for governor "at the last election." Therefore, in order to maintain uniformity in the number of signatures required as between political organizations wishing to qualify for a separate ballot at a given September primary, it was natural to interpret the statute as requiring that circulation of the petition abide the holding of the gubernatorial election which immediately precedes the September primary involved. Until recently, the governor was elected for a term of two years at the November general election in each even-numbered years. Therefore, the number of electors who cast their ballot for governor in each such *Page 46 
election determined the number of signatures which would be required to qualify a political organization to be represented by a separate ballot at the September primary two years hence.
I am aware that Art. V, sec. 1m, Wis. Const., adopted by the electorate in April, 1967, as an amendment to the Wisconsin Constitution increases the term of office for governor from two years to four years beginning with the governor elected at the general election in 1970. This means, of course, that in the future the governor will be elected at every other general election instead of at every general election. Although the practical effect of his constitutional amendment is to extend the period of time during which the election statistics generated by a gubernatorial election may be utilized from two to four years, the amendment cannot be considered as having affected the basic legislative intent underlying sec. 5.62 (2), Stats. Considering the nature of the statute and said constitutional amendment, it appears most reasonable and in accord with sound principles of statutory constitution, to continue to construe the statute as it was intended to be understood when it was enacted. 50 Am. Jur.,Statutes, sec. 236, p. 224. It is, therefore, my opinion that the length of the period for circulation of the petition under 5.62
(2), Stats., was not affected by the adoption of Art. V, sec. 1m, Wis. Const.
Finally, you inquire whether a political organization filing a petition under sec. 5.62 (2), Stats., which is signed by the electors in an assembly district, would qualify such organization for a separate ballot at the presidential preference primary to be held at the April, 1972, spring election if the petition was filed prior to the first Tuesday in February, 1972. You have expressed the view that such a filing would not so qualify the political organization involved. The basis for your conclusion is stated as follows:
"As indicated under s. 5.62, the first time a `new' party may appear, once recognized, on the ballot would be at the September Primary. This would preclude a `new' party from being placed on the ballot for the first time on the Spring Presidential Preference Primary Election."
Section 8.21, Stats., sets forth the statutory requirements relating to the presidential preference vote. Participating in such primary is specifically limited to political parties "recognized *Page 47 
under s. 5.62." One is immediately tempted to conclude that, inasmuch as the purpose of filing the petition under sec. 5.62
(2), Stats., is to obtain a separate ballot at the September primary for the political organization involved, the September primary election is the first time the organization will be considered to be a "recognized political party." On the other hand, one of the principal political functions of the presidential primary is to provide delegates to the national convention. For instance, sec. 8.12 (3) (b), Stats., provides that the "state central committee" is to deposit the declaration of acceptance of office of each such delegate in the office of Secretary of State. But such an act would be impossible for a "new" political party, since a state central committee does not even exist until candidates for state offices, senate and assembly nominated by each political party at the September primary meet thereafter, on the first Tuesday in October, to elect such a committee. Further, the various statutory political party committees are also elected at the September primary. Sec.8.17, Stats.
However, although the September primary will normally be the first time a petitioning political organization will appear on an official party ballot, I cannot say with absolute assurance that participation in such election is a prerequisite to recognition as a political party under sec. 5.62, Stats. It may be argued in fact that the statutes indicate that a political organization which is simply entitled to have its candidates on the September primary ballot is a "political party recognized under s. 5.62." For instance, sec. 7.08 (2) (b), Stats., which describes certain duties of the Secretary of State, provides:
"(b) The certified list of candidates for president and vice president nominated at a national convention by a party entitledto a September primary ballot or for whom electors have been nominated under s. 8.20 shall be sent as soon as possible after the closing date for filing nomination papers, but no later than the deadlines established in s. 10.06." (Emphasis added) Likewise, sec. 8.16 (2), Stats., provides: *Page 48 
"(2) Nominees chosen at a national convention and under s. 8.18
(2) (c) by each party entitled to a September primary ballot
shall be the party's candidates for president, vice president and presidential electors." (Emphasis added)
Section 8.19 (3), Stats., also provides, in part, as follows:
"(3) Every political party entitled, under s. 5.62, to have itscandidates on the September primary and general election ballots
has exclusive right to the use of the name designating it at any election involving political parties. . . ." (Emphasis added)
Finally, sec. 5.60 (8), Stats., provides, in part, that:
"(8) BALLOTS FOR PRESIDENTIAL VOTE. There shall be a separateballot for each party qualified under s. 5.62, listing the names of all potential candidates of that party determined under s.8.12. . . ." (Emphasis added)
Also see discussions in 9 OAG 436 (1920) and 25 OAG 610 (1936) regarding the right of a political group that has not participated in election in this state to nominate presidential electors.
However, regardless of a political organization's status as a party recognized under sec. 5.62, Stats., there appear to be numerous more obvious legal impediments precluding the placement of a presidential candidate on a presidential preference primary ballot under the circumstances you describe. As previously indicated in response to your first question, where the petition filed under sec. 5.62 (2), Stats., relates only to an assembly district, the separate ballot privilege extends only to that territory. Reading the various statutes relating to the presidential primary together, it seems rather clear that the legislature intended that the parties entitled to participate in such primary be those having the separate ballot privilegethroughout the state. Note, for instance, that sec. 5.60 (8) (a), Stats., provides, in part, that, "An official (presidential primary) ballot shall be printed and provided for use in eachvoting district. . . ." (Emphasis added) Section 8.12, Stats., which relates to the presidential preference vote, also appears consistent with such conclusion. This statute anticipates the existence of a state chairman of a state party organization "recognized by the national organization of *Page 49 
the respective political party," a national committeeman, a national committeewoman, a candidate whose candidacy is "generally advocated or recognized in the national news media throughout the United States," and a national convention. Sec.8.12 (1) (a), Stats.
Finally, since one of the principal political functions of the presidential primary is to provide delegates to the national convention (selected on the basis of congressional districts as well as in the state at large), the holding of a presidential primary in only one assembly district would appear to constitute an absurd and purposeless act which could in no way have been intended by the legislature. Therefore, as previously indicated, I must agree that a political organization filing a petition under sec. 5.62 (2), Stats., under the circumstances you describe, would not qualify such organization for a separate ballot at the presidential preference primary to be held in the April, 1972, spring election.
RWW:JCM